IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Albert Jefferson, | : | |
| Plaintiff | | Civil Action 2:12-cv-127 |
| | : | |
| v. | | Judge Graham |
| | : | |
| Michael J. Astrue, | | Magistrate Judge Abel |
| Commissioner of Social Security, | : | |
| Defendant | | |

**REPORT AND RECOMMENDATION**

Plaintiff Albert Jefferson brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying his applications for Social Security Disability and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff maintains that he became disabled, at age 37, due to epilepsy and spine damage. (*PageID* 238.) He was 43 years old at the time of the hearing before the administrative law judge, who found that Jefferson retains the ability to perform a reduced range of work having light exertional demands. The work could involve simple repetitive tasks and some complex work with no strict production requirements or fast paced work. (Page ID 46-47.) Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge erred when he found that Jefferson's impairments do not satisfy the criteria for mild mental retardation set forth in section 12.05 (C) in Appendix I of the regulations.

**Procedural History.**  Plaintiff Jefferson filed his applications for disability insurance benefits and supplemental security income on March 23, 2009, alleging that he became disabled on July 8, 2005, at age 37.  (*PageID* 179-85, 186-91.)  The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On May 24, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 88-128, 139-40.)  A vocational expert also testified.  (*PageID* 128-38.)  On August 15, 2011, the administrative law judge issued a decision finding that Jefferson was not disabled within the meaning of the Act.  (*PageID* 42-52.)  On December 9, 2011, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 32-34.)

**Age, Education, and Work Experience.**  Jefferson was born December 24, 1967.  (*PageID* 50, 220.)  He has an eleventh grade "limited" education attending special education classes.  (*PageID* 244.)  Jefferson previously worked as a fast food worker, janitor housekeeper/cleaner, furniture mover, and material handler.  (*PageID* 225, 239.)

**Plaintiff's Testimony.**  Jefferson testified that he lives with his sister, has a driver's license and typically drives twice a week.  (*PageID* 88.)  He completed the eleventh grade.  (*PageID* 89.)  He stopped going to school due to stress and he began having seizures.  *Id.*  He has attempted to obtain his GED, studying through Job Corps.  *Id.*  He has vocational training in heavy equipment operation, but did not pass

the course.  (*PageID* 89-90.)   He last worked doing housekeeper/cleaner at a hotel and stopped working due to seizures and from the chemicals.  (*PageID* 90.)

Jefferson further testified that he has not received any type of mental counseling. (*PageID* 96.)  When describing a typical day, Jefferson testified that he watches television.  He does the dishes, does not cook, but does fold laundry.  (*PageID* 109.)  He does not have problems following the news or understand "what's going on." *Id.*  He acknowledged having problems reading and writing, he can read "certain words" in the newspaper.  *Id.*  He understood the letters he received from the administration. (*PageID* 110.)  Jefferson has friends that come over to his house.  *Id.*  Jefferson admitted to weekly marijuana use.  (*PageID* 113.)  He testified that marijuana helps keep him in a calmer state.  (*PageID* 114.)

**School Records.**  On March 3, 2006, Sam Geldis, a Supervisor for Psychological Services at the Department of Special Education at the Columbus Public Schools wrote a letter explaining that Jefferson's educational records had been destroyed based on federal and state retention requirements.  (*PageID* 374.)  The only record remaining was an index card containing IQ scores from January 1980, when Jefferson was 13 years old.  These scores showed a verbal IQ of 69, a performance IQ of 75, and a full scale IQ of 72. (*PageID* 375.)  Mr. Geldis concluded that "[w]ithout the original psychological evaluation, it is important that the results of these tests should be interpreted with caution." (*PageID* 374.)

**Medical Evidence of Record.**  Although the record contains a history of treatment for numerous issues, plaintiff's arguments on appeal relate only to his psychological condition.  Accordingly, the Court has similarly restricted the summary of the evidence.

<u>Michael Wagner, Ph.D.</u>  On April 11, 2006, Dr. Wagner, a state agency reviewing physician determined that there was insufficient evidence in the record to determine whether Jefferson had any mental impairments.  (*PageID* 376-89.)

<u>Lee Howard, Ph.D.</u>  On July 17, 2009, Dr. Howard performed a psychological evaluation at the request of the Bureau of Disability Determination.  (*PageID* 415-25.)  Jefferson reported that he experienced panic attack type symptoms occurring twice a week, crying spells, suicidal ideation, and paranoia.  (*PageID* 416.)  Jefferson reported that he neither had a history of mental health treatment nor a history of psychiatric hospitalization.  *Id.*  Jefferson initially denied any illicit substance abuse to Dr. Howard, but then indicated he used marijuana once every 2-3 months.  (*PageID* 417.)  Dr. Howard noted that although Jefferson did not report any past drug use, his record showed two previous convictions for trafficking cocaine, for which he served 2 ½ years beginning in 1996 and 7 months in 2001.  *Id.*  Jefferson reported that he attended school through 12th grade, with a B to C grade average, and that he did not fail any grade.  *Id.*  Jefferson reported that he was placed in "some" special education classes, but that he was also in "mixed classes" throughout school.  (*PageID* 418.)  Jefferson reported that he worked in the past in fast food, unloading trucking, moving/storage, and

housekeeping, and that he stopped working due to seizures.  (*Id.*, *PageID* 423.)

      Dr. Howard reported that Jefferson was appropriately dressed and groomed, had normal speech, normal mood and affect, had goal-directed and coherent thought, normal association, low insight and fair judgment.  (*PageID* 419-21.)  IQ testing revealed a verbal score of 68, perceptual reasoning score of 73, working memory index of 89, processing speed index of 86, and full scale IQ of 73, which placed him in the borderline range of intellectual functioning.  (*PageID* 425.)  Dr. Howard opined that Jefferson's effort level on testing "seem[ed] to vary and the overall profile may under-predict true levels of functioning."  (*PageID* 421.)  Dr. Howard also noted that the "scaled score range from 3 to 10 would suggest that he is probably functioning more within the dull-normal range or higher and likely underperformed." *Id.*  Dr. Howard also noted that Jefferson had a "history of both vocational and educational underachievement." (*PageID* 422.)

      Dr. Howard diagnosed a panic disorder without agoraphobia and personality disorder and assigned Jefferson a Global Assessment of Functioning score of 50. (*PageID* 423.)  Dr. Howard opined that Jefferson might have a mild impairment in his ability to understand, remember and follow instructions, noting Jefferson's "IQ score appears to underestimate true levels of functioning." *Id.*  Dr. Howard found no impairment in his ability to maintain concentration, persistence, or pace, noting that Jefferson's "processing speed and working memory scores are actually superior to [his] basic IQ score." (*PageID* 423-24.)  Dr. Howard further opined that Jefferson had no significant

impairment in his ability to relate to others and a mild impairment in his ability to withstand work stress and pressure. (*PageID* 434.) Dr. Howard concluded that Jefferson could "perform in low to moderate stress positions" and was capable of managing his own funds. *Id.*

Jennifer Swain, Ph.D. On August 8, 2009, Dr. Swain, a state agency psychologist, reviewed the record and found Jefferson was moderately limited in his ability to understand, remember, and carry out detailed instructions and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*PageID* 426-27.) Dr. Swain found plaintiff was not significantly limited or there was no evidence of limitation in the remaining work related activities. *Id.*

In determining Jefferson's limitations, Dr. Swain noted "in order to give [Jefferson] the benefit of the doubt, he would have a "moderate impairment for u/r/f [understanding, remembering and following instruction] and c/p/p [concentration, persistence, and pace] of detailed complex tasks." (*PageID* 429.) According to Dr. Swain, due to Jefferson's panic attacks, he would need to work in an occupation that is not high stress with no production pressures. *Id.* Dr. Swain concluded that Jefferson retained the ability to perform simple and some more detailed tasks in a relatively static setting. *Id.*

In a Psychiatric Review Technique, Dr. Swain noted Jefferson had moderate impairment in his ability to maintain concentration, persistence or pace. (*PageID* 440.)

6

In January 2010, another state agency psychologist, Alice Chambly, Psy.D., reviewed the file and affirmed Dr. Swain's assessment. (*PageID* 486.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011 [citation to record omitted].

2. The claimant has not engaged in substantial gainful activity since July 8, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: seizure disorder, chronic headaches, cervical disc disease, panic disorder without agoraphobia, and personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [administrative law judge] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) but with the following limitations: able to lift 20 pounds occasionally and 10 pounds frequently; able to sit, stand and walk for 6-hours each in and 8-hour workday; only occasionally bending, stooping, climbing of stairs; precluded from heights and dangerous machinery; no concentrated exposure to dust, fumes, chemicals or flashing lights; and can perform simple repetitive task and some complex work with no strict production requirements or fast paced work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 24, 1967 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 8, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Page ID 44-52.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla."'  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight."'

*Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Jefferson argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge erred in failing to find that Jefferson met or equaled the requirements of Listing 12.05 (C). Plaintiff essentially argues that he satisfies Listing12.05 (C) because he has the requisite IQ score and another impairment which imposes additional and significant work-related limitations.

**Analysis.**  The criteria for mental retardation is contained in §12.05 of the Listings:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).

> If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.  Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations.  For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).  If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.  Paragraph D

9

>contains the same functional criteria that are required under paragraph B of the other mental disorders listings.
>
>12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
>The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. [. . .]
>
>>C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. §404, Subpt. P, App. 1, §12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and one of the four sets of criteria...." *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001) (citations omitted).

In the instant case, plaintiff fails to present evidence that he meets or equals the requirements of Listing 12.05 (C). As indicated above, plaintiff must present evidence showing he meets or equals the diagnostic description in the introductory paragraph of Listing 12.05, i.e., that he suffers from mental retardation: "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." The administrative law judge found the record is devoid of such evidence. (*PageID* 46.) He acknowledged that the record revealed a full scale IQ of 73, but this was felt to be an underestimate and that plaintiff was functioning

10

more within the dull-normal range. *Id.* The only evidence present in the record for the period before Jefferson reached age 22 shows IQ scores from 1980, when plaintiff was 13 years old. *See*, *PageID* 375. No medical source in the record has diagnosed plaintiff with mental retardation. In fact, Dr. Howard opined that Jefferson's IQ testing placed his overall intellectual functioning in the " borderline range of intellectual functioning." (*PageID* 425.) Dr. Howard opined that Jefferson's effort level on testing "seem[ed] to vary and the overall profile may under-predict true levels of functioning." (*PageID* 421.) Dr. Howard also noted that the "scaled score range from 3 to 10 would suggest that he is probably functioning more within the dull-normal range or higher and likely underperformed." *Id.* Dr. Howard also noted that Jefferson had a "history of both vocational and educational underachievement." (*PageID* 422.)

Plaintiff argues that the listing does not actually require a diagnosis of mental retardation, and asserts that he has met this listing because IQ testing performed when he was 13, revealed a verbal IQ of 69, performance IQ of 78, and a full scale IQ of 72. (*PageID* 375.) Plaintiff also contends that based on his testimony of that he was in special education classes in school, only completed the eleventh grade and has been unable to pass the GED test (*PageID* 89-90) further established that he meets the Listing 12.05(C). Along with the above, plaintiff argues that because the administrative law judge identified additional impairments of seizure disorder, chronic headaches, cervical disc disease, panic disorder without agoraphobia, and personality disorder, these severe impairments establish that Jefferson meets the criteria of Listing 12.05(c).

11

Listing 12.05(C) has three elements: (1) the claimant experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (i.e., before the age of twenty-two); (2) the claimant has a verbal, performance, or full scale IQ of 60 through 70; and (3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work related limitation of function. *Turner v. Comm'r of Soc. Sec.*, 381 Fed.Appx. 488, 491 (6th Cir. 2010), citing *West v. Comm'r of Soc. Sec. Admin.*, 240 Fed.Appx. 692, 697-98 (6th Cir. 2007). Here Dr. Howard found that Jefferson was likely functioning in the dull-normal range of intelligence. Further, there is no evidence in the record that Jefferson exhibited deficits in adaptive behavior initially manifested during the developmental period, that is, before age 22.

Since medical equivalence "must be supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 416.926(b), and Jefferson has failed to identify any medical opinion showing his impairment equaled Listing 12.05 (C), Jefferson has failed to carry his burden of showing equivalence to a Listing.

As there is substantial evidence in the record to support the administrative law judge's finding that Jefferson did not suffer deficits in adaptive functioning sufficient to render him disabled under Listing 12.05(C), I do not find that the administrative law judge erred in this determination.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's

motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

    s/Mark R. Abel
United States Magistrate Judge